And we'll move to our third case this morning, Alfaro-Bonilla v. Garland. Mr. Schrenk, whenever you're ready, you can come on up. May it please the Court, my name is Ray Schrenk and I have the privilege of representing the You are presented with a very significant particular social group issue in this case. And that relates to whether or not the Seventh Circuit is going to change its long line of decisions saying that socially distinct and particularity are required to define a particular social group. In this case, the particular social group was the widow of a hitman in Honduras. The judge, the immigration judge, found this to be immutable, that she can't change and should not change that condition of being the widow of a hitman. However, both the immigration judge and the Board of Immigration Appeals required that in addition to showing it was immutable, she had to show that she was socially distinct and that she had particularity. This Court, in a long line of cases starting in 2009 in Getimi v. Holder, held that social visibility or social distinction are not required. And the reason is relatively obvious if we think about it. First of all, people who are at harm in a country do not want to be recognized. They aren't socially distinct, they socially hide. Secondly, in some of the most significant cases this Court has addressed, including female genital mutilation, this Court held you can't identify, by looking at the person, what their social distinction is. Just like in Danai Afaro's case, you can't look at her and see that she's the widow of a hitman. Now, she came to the United States with her minor son in 2014 to escape the abuse of her husband, Johnny Matute Majango. He was very abusive to her, which is set forth in the record. And that abuse, of course, ended when he was assassinated with a bullet to the back of his head in 2016. In between that time, he had come to the United States to get his wife to go back to Honduras with him. However, he was deported and therefore unable to take her with him and she remains in the United States. Once Johnny Matute Majango was assassinated, her particular social group changed as to future harm. If I could interrupt for a moment. Sure. You spent most of your argument in the brief and now so far in oral argument focusing on this question of the cognizability of the particular social group as it has evolved throughout the course of this litigation. But the primary reason that your client's claim was rejected is that it was on the antecedent question about whether she had suffered past persecution. And setting aside the reason for that, whether it was because she belonged to a particular social group that is cognizable, the board concluded that she hadn't suffered past persecution. Right. And so that's where the focus should begin. Maybe I can clarify a little bit. Okay. The appellant never gave up the fact that she was a domestic violence victim. What she gave up and what is clear in the immigration judge's decision in footnote two on the second page is that what the appellant gave up was the fact that domestic violence can no longer be a nexus to future harm because the future harm cannot occur from her abusive husband because he's dead. So you are correct that both the immigration judge and the BIA said there's not past harm, but they avoided addressing two obvious things. Number one, that she was a domestic violence victim. And number two, that what had happened to her husband while he was alive in Honduras also is harm that were reflected to her. There is a nuclear family here, and she has never changed the fact that she was married to this person up through his death. What happened to him was he was shot in the arm and it was immobilized. He had people pointing guns at their house, including her, and approaching the house. He also ran a motorcycle off the road on the claim that somehow this person was going to harm him and his family, and the appellant was in that car. He warned the appellant extensively not to go out by herself because she would be at risk because he had many enemies. And finally, the ultimate of harm was when he was assassinated with a bullet to his head. There can be no question that her husband suffered harm, yet the immigration judge and the BIA did not consider that in considering harm to this widow. And yet that is a very significant factor in the cases out of the Seventh Circuit saying you can look at family unit for purposes of identifying harm. So you are correct, Judge, that they did not find this, but I find that their finding is not accurate on the facts of this case. Domestic violence alone this court has held is a... Well, the domestic violence component of this drops out because... No, the domestic violence component of future harm dropped out because it could not happen. The domestic violence itself was never given up. In fact, there was testimony allowed by the immigration judge about the domestic violence at the time of the hearing. Domestic violence never left this case. It left this case as a nexus to future harm. Well, that's the whole point of the presumption that attaches to past persecution. If the past persecution was domestic violence and that threat has ceased, then it just drops out of the case. So let's focus on the harm that is supposedly gang-related because that's... The risk of future harm is gang. Yes, I agree. And is there any evidence? What is the evidence? And there's discussion of this in both the IJ's opinion and the board's opinion about the gang-related harm to her. There is evidence supporting the gang-related events. The appellant relied upon Professor Lirio Gutierrez-Rivera as a country conditions woman's expert in Honduras. She provided opinions and the court accepted her opinions as she was an expert. She testified unequivocally that this person, Danaya Alfaro, was at great risk of future harm because of gang involvement. Then a question came up, well, did the appellant say that he was a member of a gang or not? And she was asked a question by the immigration judge in which she answered, saying, if he was not a member of a gang, the threat to Danaya Alfaro Bonilla will continue if there was any gang-related enemies that he had. And that's basically where this case is. He was a hit man. He had many enemies. They were going after him. And in Honduras, they don't just go after the person who hurt them. They go after the person's family, again in the testimony and supported by the evidence. So, counsel, the testimony by the claimant, Ms. Bonilla, I thought she said she didn't know whether or not, she personally did not know whether or not her husband was part of a gang. That is correct. She did say that. Or that her husband was a hit man, right? And I think the information about that came from Ms. Sonia, one of her friends. While she was living in Honduras with her husband, she did not know he was a hit man. She found that out from a friend after she was in the United States. You are correct. And secondly, you are correct that she did not say, she didn't say he wasn't a member of the gang. What she said was, I do not know if he was a member of the gang. Again, going to her credibility, because it would have been very easy for her to say, yes, he was, and the whole argument would be different, but she didn't say that. And so what she did in telling the truth is she created this issue, this issue about whether he was a member of a gang or not. Professor Gutierrez Rivera took care of that by saying whether or not he was a member of a gang is not as significant as whether or not gang members were after him, because it's the gang member contact and going after him for harming one of their own that creates this risk of future harm for his wife or widow. I do want to save some time for rebuttals. That's fine. Thank you. Thank you. Ms. Bird. May it please the Court, Sarah Bird on behalf of the Respondent and the Attorney General. The Court should deny this petition for review on either of two paths or grounds. The first seems to have been the focus of the questions. There was not a showing of past persecution, and there's no well-founded fear of future persecution. The second is the cognizability of the particular social group, which I think is, and I agree with opposing counsel, is a very important issue before this Court. And this case presents an opportunity to clarify the law and defer to the agency's decisions. But I'm happy to address either, whatever there are questions about. I'll start with the past persecution. Because the domestic violence claim was withdrawn, while I agree that it's still part of her experience, it was no longer part of her claim. And so she couldn't, her abuser, the reason she fled Honduras was his abuse, and he was now dead. So she didn't fear returning because of that anymore. So as a strategic matter, she withdrew that claim and proceeded on a new claim representing why she now fears returning. And so the domestic violence isn't part of the past persecution. There are some vague threats that she experienced related to her husband's enemies that just don't rise to the level under this Court's case law of past persecution. In general, threats go to a future fear rather than being enough in and of themselves to be past persecution. So the agency reasonably and substantial evidence supports it, found that there was not past persecution. As to well-founded fear, she no longer gets a presumption because she didn't show past persecution. So that's her burden. And here, the agency found that it was speculative and also that she could reasonably relocate. She can't show a well-founded fear if she can reasonably relocate. She did not administratively exhaust the reasonable relocation findings. She didn't challenge it. And the Board said it was undisputed, so the Board found that there was no challenge to it. It's undisputed and didn't get into it. And so it was also waived in the opening brief. So as to well-founded fear, that issue, the relocation issue, which is dispositive of whether or not she can meet that burden, isn't properly before this Court. Turning to the particular social group, if there are no questions about that, one possible ground for denial. Particular social group, the Board held in 2014, in response to this Court's line of cases that counsel mentioned, that social visibility does not require ocular visibility. It doesn't require that you be able to see and recognize someone. But instead, it has always been intended to point to social distinction. And in 2014, the Board renamed it and clarified and addressed this Court's, and the Third Circuit had also disagreed, addressed those concerns in two decisions, published precedent Board decisions, and every other circuit of appeals has deferred to those cases. This Court has said in multiple cases now that it's still an open question. And the fact that it's an open question is significant because it appears that there may be some confusion for applicants. When it's an open question, the Board is going to apply their precedent. MEVG and WGR apply because it's an open question in this Court. But some applicants seem to think that they're still, they only have to show immutability. So for that reason, and because the Board's decision is reasonable, this Court should take advantage of this opportunity in this case and defer to the Board's interpretation in MEVG and WGR. Don't we have some opinions citing those cases? Absolutely, but not very many, actually. I found about four. So CC and Torres are still causing problems? CC and those cases were before. I understand. That's what you're asking us to fix is what I'm getting at. Yes, absolutely, Your Honor. And there are very few published Seventh Circuit decisions, or even unpublished ones, citing MEVG and WGR. I've found a few, but none of them turn on particularity or social distinction. For example, in Melnick in 2018, this Court has kind of a history of it, cites, acknowledges CC and those concerns, cites the Board's efforts at clarification, and then says we have not had the occasion to consider this effort, and we need not do so today, because in that case the Board didn't rely on social visibility or particularity. So it wasn't before the Court. And similarly, in WGA, the Court declined to reach the question. The Court acknowledged some concerns, and we addressed those concerns in our brief, but again said that it's an open question. So really this Court has not yet deferred. This is the only outlier circuit that hasn't yet deferred to MEVG and WGR. I also, as I was looking at this, noticed that in CC, the Court starts its whole analysis of the particular social group by saying we must first ascertain the parameters or contours of the group. So although the Court was not agreeing with the Board on particularity, the Court was actually kind of applying it, because parameters and contours of the group is what particularity goes to. It's the boundaries of the group. And similarly, this Court in Ramos said that while the Court has not deferred to social distinction yet, the Court talks about how veterans are not socially visible, but they are a socially salient category. And that's social distinction right there, that they're recognized in society as a category, even though they are not visibly identifiable. So this Court's case law, even prior to MEVG and WGR, seems to have considered this somewhat. And then the Board clarified and has shown that these are reasonable clarifications, because they are in line with some of this Court's case law and how this Court was approaching it. And they're entitled to deference, even if they're not the best. Well, true, true. But I do have an answer to that, Your Honor. Oh, good. Well, not the actual answer. We'll see what happens with that. But it does seem possible that that case will be decided on Chevron Step 1 or will mainly affect Chevron Step 1, whereas a particular social group has always gone to Chevron Step 2, because it's so ambiguous. So we'll see what happens with Chevron, but at the very least, even if Chevron is totally upended, this Court would be in the same place as every other court, instead of being the outlier who hasn't yet deferred. And MEVG and WGR, so many case names with acronyms or initials, those are still current Board precedent. There has been no shift. No shifts whatsoever. In fact, with all the shifting of attorney general decisions lately. In a lot of immigration contexts. Those have remained constant and did not seem to have the political ups and downs that some of the other decisions had. Okay. If there are no further questions, thank you, Your Honor. All right. Thank you very much. Mr. Schrank. Briefly, in response to the question about Chevron deference, this Court and WGA versus Sessions refused to do the Chevron deference, but said it's an open question. But interestingly, that footnote suggested that this Court was inclined not to follow Chevron deference, primarily because they said that the whole argument between particularity and social distinction is circular. To be socially distinct, you are now pointing out a very limited amount of particularity. I invite you to read that footnote. It's footnote number two in the WGA versus Sessions case where this Court says very clearly they are questioning Chevron deference in this kind of case because of the difficulty it poses for a particular social group. And the exclusion of groups that would normally be accepted as particular social groups because you are defining the size and you are defining the distinction part of it. The argument that DV was withdrawn, I've already argued about that and told you my thoughts about that. But on relocation, Professor Gutierrez-Rivera testified to relocation in a country as small as Honduras is very difficult, if not impossible. The economic hubs of relocation are the big cities. And there's no program available in Honduras to help someone relocate or go to a different park. And there's no protection in Honduras for those people who are victims of domestic violence. All of that is in the testimony. All of that goes to that whole question that is raised about whether or not there's relocation. Finally, I would ask this Court to please consider humanitarian asylum. Humanitarian asylum is designed for those people whose past harms cannot be projected to future harms, but they're at future harm from someone else. I cited a First Circuit decision which says that there is no law that says that humanitarian asylum must be raised before an immigration judge or the BIA before the Circuit Court can address it. Thank you. Thank you. Well, thanks to both counsel. The case is taken under advisement.